JOSEPH P. LEDWIDGE, RESPONDENT, *v.* GEORGE H. MATSON AND OTHERS, APPELLANTS.

ELECTIONS.—REGISTRATION.—AFFIDAVITS OF VOTERS.—Section 24 of Edmunds–Tucker law required all the oaths or affirmations administered by the registration officers to be delivered to the clerk of the probate court of the county where administered, and sec. 4, cap. 42, Laws of Utah 1892, required such registration officers to deliver all such oaths on or before the second Monday of October, *held* that the territorial statute was valid and in pursuance of the congressional law.

Petition and judgment thereon for a writ of mandate of the district court of the first district, Hon. James A. Miner, judge.  The opinion states the facts, except the following:

Section 242, 1 Comp. Laws 1888, p. 320, provided: "Upon the completion of the list, it shall be the duty of

each assessor as aforesaid to proceed to make out a list in alphabetical order for each precinct, containing the names of all the registered voters of such precinct and shall on or before the first day of July of each year deliver all of said lists and affidavits to the clerk of the county court."

At the time this law was passed the general election was fixed for the first Monday of August of each year, and the assessor of each county was made the general registration officer of the county, whose duty it was to have a deputy in each precinct to register voters which was required to be done before the first Monday in June of each year, and in the first week in June of each year any voter might appear and have his name put upon the list, if he was found qualified. An affidavit was prescribed for each voter to take, as a prerequisite to registration. These were the affidavits mentioned in the section 242 *supra,* to be delivered to the clerk of the county court, who was then and is now clerk of the probate court.

While the law was in this condition the Edmunds law was passed, March 3, 1882, which declared vacant all election and registration offices and devolved the whole duty of such officers under the laws upon the board of Utah commissioners, who were to register voters, conduct elections, receive or reject votes, canvass and return the votes under the existing laws of the United States and the Territory of Utah, and the legislative assembly of the Territory was authorized to make such laws, conformable to the organic act of the Territory and not inconsistent with other laws of the United States, as it should deem proper concerning the filling of the offices declared vacant.

Under this law the board of Utah commissioners appointed a general registration officer for each county, who performed the duties devolved upon the county assessor by the territorial laws.

Then in 1887, the Edmunds-Tucker law was passed,

which prescribed a new affidavit for all voters, and required such affidavits to be delivered to the clerk of the probate court of each county, to be deemed public records in such county. But no time was specified for such delivery.

In 1892 the legislative assembly of Utah Territory in Session Laws of 1892, cap. 29, p. 27, fixed the general election for the Tuesday next after the first Monday in November of each year and amendments were made, cap. 42, which provided that the registration should be made before the first Monday in September; the first week in September was fixed for revising the lists, and the lists made out along with the affidavits were required to be delivered to the clerk of the county court on or before the second Monday in October.

*Mr. A. R. Heywood* and *Mr. John E. Bagley,* for the appellant.

They argued that the registration officers now exercised under the Edmunds law all duties in regard to the law, such as hearing objections to any names on the list and in posting the lists, which the clerk of the county court and the senior justice of the peace had theretofore exercised and hence the affidavits should remain in their hands, 1 Comp. Laws 1888, pp. 320, 321. The board of Utah commissioners had so construed the law by requiring registration officers to transmit the affidavits the next day after the election, in their circular of March 12, 1892.

*Mr. H. W. Smith,* and *Mr. David Evans,* for the respondent.

ZANE, C. J.:

It appears from the record in this case that the defendants were registration officers for the county of Weber, in Utah Territory, in 1892, by appointment of and under the

board of commissioners appointed by the president of the United States in pursuance of section 9 of an act of congress in force March 22, 1882; that in registering the votes of that county in October, and prior to the second Monday thereof, for the election to be held November 8, 1892, in pursuance of section 24 of an act of congress in force March 3, 1887, they respectively took the affidavits prescribed therein of numerous voters. It further appears that after such affidavits had been so taken, and before commencing this action, the plaintiff, as such clerk, demanded such affidavits, and the respective defendants refused to deliver the same, and that this application for a writ of *mandamus* commanding the delivery was made October 24, 1892. Upon a hearing of the cause the court adjudged and ordered a peremptory writ to issue, commanding the respective defendants to deliver all such affidavits to the plaintiff as such clerk. From this judgment the defendants have prosecuted their appeal. The plaintiff insists that it was the duty of the defendants to deliver the affidavits taken by them on or before the second Monday of October to the clerk of the probate court, while the defendants insist that it was their duty to retain them until after the election.

Section 24, *supra,* requiring such officers to take the oaths, provides: "Such registration officer is authorized to administer said oath or affirmation, and all such oaths or affirmations shall be by him delivered to the clerk of the probate court of the proper county, and shall be deemed public records therein." And section 242, Comp. Laws Utah 1888, as amended by section 4, c. 42, Laws Utah 1892, requires such registration officers to deliver all such oaths to the clerk on or before the second Monday of October. This territorial statute we hold to be valid. It is apparent that the object of requiring the oaths to be filed in a public office, and to be open to the inspection of

the public, is that they may be preserved in a permanent form, and that the people interested in the election may examine the same, and ascertain whether any names have been placed on the register without the persons having taken the oath, or any who have taken the oath have been left off. The registration officer has no right to place the name of any person on the register who has not taken it. After the officer receives the oath and registers the voters, it is his duty to deliver all such affidavits to the probate clerk, whose duty it is to keep the same as a public record, so that the public may know, by inspection, whether any person has been registered without taking the oath required by the law, or the names of any persons who have taken it have been left off. It is not necessary for the registration officer to keep the oaths in his possession. If the right of any person to vote, whose name is upon the record, is contested on the ground that he has not taken the oath, the registrar may inspect the record, or a certified copy of the record can be produced, or it can be shown that there is no record of it. The judgment of the court below is affirmed.

BARTCH, J., concurred.